UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM GRINNELL,
FRANK SHELDON, and
DAVID BLANCHETTE,

                Plaintiffs,

           -v-                    8:23-CV-1265

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, NEW YORK
STATE DEPARTMENT OF HEALTH,
and TOWN OF TICONDEROGA, NEW
YORK,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| YOUNG, SOMMER LAW FIRM<br>Attorneys for Plaintiffs<br>Executive Woods<br>5 Palisades Drive<br>Albany, NY 12205 | WILLIAM A. HURST, ESQ. |
| U.S. DEPARTMENT OF JUSTICE<br>Attorneys for Federal Defendant<br>Environmental Enforcement Section<br>P.O. Box 7611<br>Washington, DC 20044-7611 | HEATHER E. GANGE, ESQ. |
| HON. LETITIA JAMES<br>New York State Attorney General<br>Attorneys for State Defendant<br>28 Liberty Street<br>New York, NY 10005 | ABIGAIL KATOWITZ, ESQ. |

WHITEMAN, OSTERMAN                    ROBERT S. ROSBOROUGH, ESQ.
  LAW FIRM
Attorneys for Town Defendant
One Commerce Plaza, Suite 1900
Albany, NY 12210


MEYER, FULLER &                       MATTHEW F. FULLER, ESQ.
  STOCKWELL, PLLC
Attorneys for Town Defendant
1557 State Route 9
Lake George, NY 12845


DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

At first glance, the plaintiffs in this case appear to have brought a citizen

suit to enforce the federal Safe Drinking Water Act (the "SDWA") against

their municipality, the Town of Ticonderoga, New York (the "Town").  But a

closer inspection reveals that this case is just an improper attempt to

collaterally attack a settlement agreement adopted in an earlier dispute

between the defendants in this case.

In 2018, the United States and the State of New York (the "State") sued

the Town for violations of the SDWA (the "Enforcement Action").[1]  Dkt. No. 1.

The Enforcement Action was assigned to Senior U.S. District Judge Gary L.

---

[1] The United States, on behalf of the Environmental Protection Agency (the "EPA"), and the State of New York, by and through the New York State Department of Health (the "NYDOH"), commenced the Enforcement action against the Town.  Dkt. No. 1.

Sharpe.  *Id.*  Those parties eventually reached a settlement.  *Id.*  Thereafter, the United States, the State, and the Town finalized a Consent Decree that was posted for public comment and then approved by Judge Sharpe on July 11, 2018.  *Id.*; *see also United States v. Town of Ticonderoga*, 18-CV-442 (N.D.N.Y.).

As relevant here, the Consent Decree imposed a series of deadlines by which the Town would make improvements to its drinking water supply.  To do so, the Town needed to decommission its old drinking water supply and treatment system first.  As a result, some residents of the Town stood to lose the drinking water supply to their homes.

Thus, on October 11, 2023, plaintiffs William Grinnell ("Grinnell"), Frank Sheldon ("Sheldon"), and Daniel Blanchette, Sr. ("Blanchette") (collectively, "plaintiffs") filed this civil action against the EPA, NYDOH, and the Town (collectively "defendants") under the so-called "citizen suit" provision of the SDWA.  Dkt. No. 1.  Plaintiffs seek equitable relief that includes, *inter alia*, annulment or invalidation of the Consent Decree.  *Id.*

On January 18, 2024, EPA, the State, and the Town each moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) to dismiss plaintiffs' complaint in its entirety.  Dkt. Nos. 16, 18, 19.  The motions have been fully briefed and will be considered on the basis of the submissions without oral argument.  Dkt. Nos. 22, 23, 24, 25.

## II. **BACKGROUND**

### A. **Statutory Background**

"The SDWA was passed in 1974 to establish uniform quality standards for the approximately 240,000 public water systems in the United States[.]"  67 AM. JUR. PROOF OF FACTS 3D *The Safe Drinking Water Act: Background* § 1 (2002).  The SDWA authorizes the EPA "to set national health-based standards for drinking water to protect against both naturally-occurring and man-made contaminants that may be found in drinking water."  *Overview of the Safe Drinking Water Act*, EPA, *Safe Drinking Water Act* (Feb. 14, 2024), https://www.epa.gov/sdwa/overview-safe-drinking-water-act.

The EPA has promulgated two kinds of water quality standards: "National Primary Drinking Water Regulations" ("Primary Regulations") and "National Secondary Drinking Water Regulations" ("Secondary Regulations").  *Secondary Drinking Water Standards: Guidance for Nuisance Chemicals*, EPA, *Safe Drinking Water Act*, (Feb. 14, 2024), https://www.epa.gov/sdwa/secondary-drinking-water-standards-guidance-nuisance-chemicals.

Primary Regulations are "legally enforceable standards and treatment techniques that apply to public water systems."  *National Primary Drinking Water Regulations*, EPA, *Ground Water and Drinking Water* (Jan. 2, 2024), https://www.epa.gov/ground-water-and-drinking-water/national-primary-

drinking-water-regulations.  Secondary Regulations are not enforced by the

EPA.  *Id.*  Instead, they act as "guidelines" to "assist public water systems in

managing their drinking water for aesthetic considerations, such as taste,

color, and odor."  *Id.*

To regulate the 240,000 public drinking water systems throughout the

United States, the SDWA delegates authority to two different groups.  First,

the statute delegates enforcement authority, also called "primacy," to a State

or Indian Tribe if it meets the primacy requirements.  One such requirement

is that the State or Tribe implement drinking water regulations that are "no

less stringent" than the Primary Regulations.  40 C.F.R. § 142.10 (2005).  As

a result, States can closely monitor their own public drinking water supplies

to comply with the SDWA.

But the SDWA also delegates enforcement power to private citizens.  The

statute features a "citizen suit" provision that permits plaintiffs to enforce

the SDWA and the duties of the EPA administrator.  42 U.S.C. § 300j-8(a).

In particular, the citizen suit provision provides:

> Except as provided in subsection (b) of this section, any
> person may commence a civil action on his own behalf
> (1) against any person (including (A) the United
> States, and (B) any other governmental
> instrumentality or agency to the extent permitted by
> the eleventh amendment to the Constitution) who is
> alleged to be in violation of any requirement
> prescribed by or under this subchapter; (2) against the
> Administrator where there is alleged a failure of the

Administrator to perform any act or duty under this subchapter which is not discretionary with the Administrator; or (3) for the collection of a penalty by the United States Government (and associated costs and interest) against any Federal agency that fails, by the date that is 18 months after the effective date of a final order to pay a penalty assessed by the Administrator under section 300h-8(b)1 of this title, to pay the penalty.[2]

*Id.*

Importantly, however, the citizen suit provision is conditional.  To bring a citizen suit under § 300j-8(a), the plaintiff must first comply with the notice requirements and/or the diligent prosecution bar.  § 300j-8(b).  Specifically, the SDWA provides:

No civil action may be commenced--(1) under subsection (a)(1) of this section respecting violation of a requirement prescribed by or under this subchapter--(A) prior to sixty days after the plaintiff has given notice of such violation (i) to the Administrator, (ii) to any alleged violator of such requirement and (iii) to the State in which the violation occurs, or (B) if the Administrator, the Attorney General, or the State has commenced and is diligently prosecuting a civil action in a court of the United States to require compliance with such requirement, but in any such action in a court of the United States any person may intervene as a matter of right; or (2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator; or (3) under subsection (a)(3) prior to 60 days after the

---

[2] The term "Administrator" in the SDWA refers to the administrator of the EPA.  42 U.S.C. § 300f(7).

> plaintiff has given notice of such action to the Attorney
> General and to the Federal agency.

42 U.S.C. § 300j-8(b).

### B.  <u>Factual Background</u>

Plaintiffs are residents of the Town.  Compl. ¶¶ 13–15.  Accordingly, they receive their drinking water from the Town's public drinking water system.  *Id.*  The Town is divided into eight water districts.  Ex. 1 to Compl., Dkt. No. 1 at 26.[3]  Some of the Town's residents live outside of one of these water districts.  *Id.*  These residents are referred to as "out-of-district" users.[4]  *Id.*  Plaintiffs Sheldon and Blanchette are two such "out-of-district" users.  Compl. ¶ 38.

Historically, the Town sourced its public drinking water supply in part from Gooseneck Pond.  Compl. ¶ 40.  Water was sent from Gooseneck Pond through the Gooseneck Pond Chlorination Station before it was then distributed or stored in the Chilson Reservoir.  *Id.*  But Gooseneck Pond is an unfiltered surface water source.  *Id.*

In April 2018, the United States, on behalf of the EPA, and the State, by and through the NYDOH, commenced the Enforcement Action before Judge

---

[3]  Pagination corresponds to CM/ECF.

[4]  According to the Town, the Town supplies water to its out-of-district users, or residents who do not live within one of the eight water districts, by contract.  Town.'s Mem. at 6.  The Town claims that should it cancel its contractual agreements with these residents, out-of-district users would not be legally entitled to public drinking water.  *Id.*

Sharpe against the Town for violating the SDWA, the New York Public Health Law, and New York State Sanitary Code.  Compl. ¶ 1; *United States v. Town of Ticonderoga*, 18-CV-442 (GLS).  Specifically, the EPA and the State alleged that the Town was violating the "Enhanced Treatment Rule." *Id.* ¶ 44.

In June 2018, the parties settled the Enforcement Action by entering into the Consent Decree.  Compl. ¶ 44.  The Consent Decree was posted for public notice and comments for thirty days in accordance with 20 C.F.R. § 50.7.  Ex. 1 at 38.  Ultimately, Judge Sharpe approved and adopted the Consent Decree on July 11, 2018.  *Id.* at 47.

The Consent Decree required the Town to become compliant with the SDWA and state and local drinking water regulations.[5]  Ex. 1 at 29.  The Consent Decree imposed a series of deadlines on the Town to make improvements to its public drinking water system.  *Id.* at 29–37.  Specifically, the Consent Decree required the Town to decommission the Gooseneck Pond drinking water site no later than January 24, 2025.  *Id.* at 31.

On December 19, 2022, the Town notified out-of-district users, including plaintiffs Sheldon and Blanchette, of its plan to decommission the Gooseneck

---

[5]  Plaintiffs have attached a copy of the Consent Decree to the Complaint and directly reference the Consent Decree in the body of the Complaint.  Ex. 1; Compl. ¶ 1.  Further, the Consent Decree is a public record.  Therefore, the Court may take judicial notice of the Consent Decree.  FED. R. EVID. 201(b)(2).

Pond drinking water source "as of June 24, 2025."  Compl. ¶ 38  But instead of offering a replacement water supply, the Town informed these out-of-district users that they would be responsible for the cost of developing and maintaining a new drinking water supply for their homes.  Ex. 3 to Compl., Dkt. No. 1 at 61.[6]

Plaintiff Grinnell was informed that he, too, would be disconnected from the Town's old drinking water supply, but that he would be reconnected to a new supply.  Compl. ¶ 13.  One of the Town's new supplies would come from newly drilled well-fields.  *Id.* ¶ 46.  But the water from these well-fields has already tested "off the charts" for "hardness," or, "a highly corrosive and undesirable condition[.]"  *Id.* ¶ 47.

Plaintiffs are concerned that they will either be left to supply their own drinking water or will be reconnected to the new well-fields and suffer the consequences of corrosion, discoloration, and odor caused by "hard water."[7]  Compl. ¶ 55.  This lawsuit followed.

---

[6] Plaintiffs have attached a copy of the notice to the complaint as "Exhibit 3."  Ex. 3 at 61.  However, the notice plaintiffs have attached is addressed to "Stephanie Frazier, 2585 NYS RTE 74 TICONDEROGA, NY 12883."  *Id.*  Ms. Frazier is not a party to this lawsuit nor do any of the plaintiffs live at her address.  Compl. ¶¶ 13–15.  Notably, the notice proposes solutions for Ms. Frazier's parcel—not plaintiffs' parcels.  Ex. 3 at 61.

[7] Plaintiffs have appended photographs of the damage done to home appliances and fixtures to the complaint.  *See* Compl. ¶ 54.  Plaintiffs do not claim that these photographs depict their homes.  *Id.*

## III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up).  Rule 12(b)(1) motions may be either *facial* or *fact-based*.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

Facial Rule 12(b)(1) motions are "based solely on the allegations of the complaint . . . and exhibits attached to it[.]"  *Id.*  To resolve a facial motion, the district court must "determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (cleaned up).  In doing so, the district court "must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff."  *Wagner v. Hyra*, 518 F. Supp. 3d 613, 623 (N.D.N.Y. 2021) (quoting *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020)).

By contrast, a defendant who makes a fact-based Rule 12(b)(1) motion submits extrinsic evidence.  *Carter*, 822 F.3d at 57.  If defendant's extrinsic evidence reveals a dispute of fact whether jurisdiction is proper, plaintiff must proffer evidence to controvert defendant's evidence.  *Id.*  To resolve a

fact-based motion, the district court must then make findings of fact to determine whether plaintiff has standing to sue. *Id.*

## B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

Plaintiffs' complaint sets forth a single cause of action under the citizen suit provision of the SDWA. Compl. ¶¶ 50–59. In reality, plaintiffs have alleged two distinct claims: *first*, under § 300j-8(a)(1) for violations of the

SDWA; and *second*, under § 300j-8(a)(2) for breaches of the EPA

Administrator's non-discretionary duties.  *Id.*  Defendants have moved to

dismiss both claims for lack of subject matter jurisdiction and/or the failure to

state a claim.  Town's Mem. at 12–17; EPA's Mem. at 14–17; NYDOH's Mem.

at 14–18.

As an initial matter, plaintiffs' second claim under § 300j-8(a)(2) is

nominally asserted against all defendants.  However, the SDWA expressly

defines the "Administrator" as "the administrator of the EPA."  42 U.S.C. §

300f(7).  Therefore, plaintiffs may not bring a § 300j-8(a)(2) claim against the

Town or the NYDOH.  To the extent that plaintiffs argue that the NYDOH

has "stepped into the shoes of the EPA," through its *primacy*, plaintiffs have

cited no caselaw that supports this conclusion.  Accordingly, plaintiffs' § 300j-

8(a)(2) claim will be dismissed against the NYDOH and the Town.

## A.  Subject Matter Jurisdiction

Next, defendants have identified several defects in plaintiffs' complaint

that implicate the Court's subject matter jurisdiction over this dispute.  In

particular, the Town argues that plaintiffs lack of Article III standing to sue,

while the EPA and the NYDOH argue that plaintiffs' lawsuit is barred by

principles of sovereign immunity.  Town's Mem. at 12–17; EPA's Mem. at 14–

17; NYDOH's Mem. at 14–18.

Standing and sovereign immunity implicate the Court's subject matter jurisdiction.  *United States v. Texas*, 599 U.S. 670, 675 (2023) (collecting cases); *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Federal courts have an independent obligation to ensure that subject matter jurisdiction exits.  *Collins v. Yellen*, 594 U.S. ----, 141 S.Ct. 1761, 1779 (2021); *Hertz Corp. v. Friend*, 559 U.S. 77, 95 (2010).  Accordingly, the Court will analyze its subject matter jurisdiction before proceeding to the merits.

## 1. <u>Standing</u>

The Town argues that plaintiffs have failed to plausibly allege a critical component of Article III standing: an injury-in-fact.  Town's Mem. at 15–17.  According to the Town, plaintiffs' allegations of future harms are speculative and do not plausibly involve any concrete, particularized injuries that they have suffered or will imminently suffer.  *Id.*  In opposition, plaintiffs respond that the Town's argument "relies on an unduly crabbed interpretation of the complaint."  Pls.' Opp'n at 9.

Article III limits the judiciary's power to "cases or controversies."  U.S. CONST. art. III § 2.  A case or controversy exists where there are "adverse parties with personal interests in the matter."  Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 882 (1983)).  Within our federal jurisprudence, a "personal interest" is defined as an actual or imminent, concrete and particularized

injury-in-fact that is fairly traceable to the challenged action of the defendant and is likely to be redressed by a favorable judicial decision. *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023).

As relevant here, an injury is imminent if it is "certainly impending." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 n.2 (1992) (quotation omitted) ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending.'"). An injury is particularized, simply stated, if it is personal to the plaintiff. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

The party invoking federal jurisdiction bears the burden of establishing Article III standing. *Soule v. Conn. Assoc. of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023) (citation omitted). Plaintiffs' burden of proof to establish standing depends on the procedural posture of the litigation. *Lujan*, 504 U.S. at 561 (quotation omitted). At the pleading stage, plaintiffs must plausibly allege facts that are sufficient to establish standing. *Id.*

Importantly, though, plaintiffs must demonstrate standing for *each* form of relief requested in the pleading. *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citing *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 266 (S.D.N.Y. 2014)). Here, plaintiffs have sought injunctive relief. Compl. at 14. Therefore, plaintiffs must allege a "real or immediate threat"

of injury. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)).

Upon review, plaintiffs have alleged sufficient facts to establish standing for Sheldon and Blanchette only. But they have not alleged facts sufficient to give Grinnell standing. While plaintiffs claim that they will each be disconnected from the Town's old drinking water supply, only Grinnell claims that he will be reconnected to a new "yet-constructed" drinking water supply. Compl. ¶¶ 13–15.

Plaintiffs' complaint alleges two different theories of harm. Grinnell's theory is that he will receive drinking water from the newly-drilled well fields that tested high for "hard water," and he is concerned that this water will damage his home. *Id.* ¶¶ 13, 46–47. Sheldon and Blanchette, by contrast, are concerned that will *not* be reconnected to a water supply. Instead, they will have to bear the cost of locating, developing, and maintaining their own drinking water supply. *Id.* ¶¶ 14–15.

Grinnell's theory of harm does not suffice to plausibly allege an injury-in-fact because it is too speculative. Plaintiffs do not allege that Grinnell has received any kind of notice that he will be connected to a new drinking water supply, nor that it will be sourced from the newly-drilled well fields. Compl. ¶¶ 13, 55; Ex. 3 at 61. Plaintiffs only claim that Grinnell will be reconnected to a newly "as-yet constructed" supply. *Id.* ¶ 13. In short, plaintiffs have not

pleaded sufficient facts to plausibly show that Grinnell will imminently suffer an injury-in-fact.  Accordingly, Grinnell must be dismissed as a plaintiff in this action.

However, plaintiffs have plausibly alleged that Sheldon and Blanchette will suffer an imminent injury-in-fact.  Sheldon and Blanchette's theory of harm is that they will each be left to bear the cost of developing and maintaining their own private drinking water supplies once they are disconnected the old supply.  Compl. ¶¶  14–15.  Sheldon and Blanchette's theory relies on the Consent Decree, which establishes that plaintiffs' old water supply, Gooseneck Pond, will be decommissioned no later than January 24, 2025.  *Id.* ¶ 38; Ex. 1 at 31.  At this early stage of the proceedings, this injury appears fairly traceable to the challenged conduct of defendants: implementing the terms of the Consent Decree.  *Id.* ¶ 1; Ex. 1 at 31.  Likewise, the injury could be redressed by a favorable judicial decision setting aside the current Consent Decree.[8]

## 2. **Sovereign Immunity**

The EPA and the NYDOH assert that sovereign immunity operates as a jurisdictional bar to plaintiffs' lawsuit.  NYDOH's Mem. at 14–18.  The NYDOH's argument relies on the Eleventh Amendment, which shields the

---

[8]  Even so, Sheldon and Blanchette's claims fail for basic procedural reasons that will be explained below.

State and its agencies from suit in federal court absent certain limited

exceptions.  NYDOH's Mem. at 14–18.  The EPA, on the other hand,

acknowledges that the SDWA abrogates its sovereign immunity, but only in

limited circumstances not applicable here, *i.e.*, when plaintiffs have stated a

claim under one of the causes of action available under the citizen suit

provision.  EPA's Mem. at 14–17.

It is well established that as sovereigns, the States and their agencies are

immune from suit in federal court.  *Dep't of Agr. Rural Dev. Rural Housing*

*Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) (citing *United States v. Testan*, 424 U.S.

932, 399 (1976)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

100 (1984) (citations omitted).  Accordingly, unless Congress has validly

abrogated immunity or the sovereign has consented to be sued, immunity

acts as a jurisdictional bar.[9]  *Kirtz*, 601 U.S. at 48; *Torres v. Texas Dep't of*

*Public Safety*, 597 U.S. 580 587 (2022).  As relevant here, Congress validly

abrogates a State's sovereign immunity under the Eleventh Amendment

when it unequivocally expresses its intent to abrogate the immunity

---

[9]  Plaintiffs may sue the head of the EPA and/or the NYDOH in his or her official capacity for prospective injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908).  However, plaintiffs have not named the administrator of the EPA nor the head of the NYDOH in this lawsuit.

pursuant to a valid exercise of power.[10]  *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55 (1996) (quotation omitted).

Similarly, a State may waive its sovereign immunity by voluntarily invoking federal jurisdiction, *i.e.,* filing a lawsuit in federal court, or otherwise unequivocally expressing its consent to be sued in a federal court. *Clark v. Barnard*, 108 U.S. 436, 447 (1883) ("The immunity from suit belonging to a state . . . is a personal privilege which it may waive at pleasure[.]"); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (collecting cases); *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002).

### i. The NYDOH

The NYDOH argues that Congress has not validly abrogated the State's sovereign immunity under the SWDA nor has the State waived its immunity from those suits.  NYDOH's Mem. at 14–15.  In opposition, plaintiffs respond that the State waived its sovereign immunity by invoking federal jurisdiction when it commenced the Enforcement Action, and that this case is related to that action.  Pl.'s Opp'n at 17.

---

10   For instance, Congress may validly abrogate a state's sovereign immunity pursuant to § 5 of the Fourteenth Amendment.  *See Alden v. Maine*, 527 U.S. 706, 756 (1999) ("We have held also that in adopting the Fourteenth Amendment, the people required the States to surrender a portion of the sovereignty that had been preserved to them by the original Constitution, so that Congress may authorize private suits against nonconsenting States pursuant to its § 5 enforcement power.").

Upon review, the Eleventh Amendment bars plaintiffs' SDWA claims against the NYDOH.  The plain text of the SDWA does not manifest any intention by Congress to abrogate the State's sovereign immunity under the Eleventh Amendment.  *See Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999) (holding that identical citizen suit provision in the Clean Water Act did not unequivocally express Congress's intent to abrogate sovereign immunity and subject states to suit).

Nor has the State waived its state sovereign immunity.  The State has not done so by invoking  federal jurisdiction or otherwise.  Instead, plaintiffs invoked federal jurisdiction when they filed their complaint with the Clerk of the Court.  *See Lapides*, 535 U.S. at 618–19 (holding that the state could not simultaneously invoke federal jurisdiction and sovereign immunity).

Therefore, State's sovereign immunity bars plaintiffs' claims against NYDOH.[11]  Accordingly, the NYDOH will be dismissed.

ii. <u>The EPA</u>

The EPA, by contrast, has acknowledged that the SDWA expressly abrogates its federal sovereign immunity under certain, limited circumstances.  EPA's Mem. at 16–17.  The EPA argues that plaintiffs' claim

---

[11]  While it is true that under *Ex Parte Young*, plaintiffs could sue the head of the NYDOH in his or her official capacity for prospective injunctive relief.  209 U.S. 123 (1908).  However, even if plaintiffs amended their complaint to bring an official capacity suit against the head of the NYDOH, plaintiffs' claim would still fail on the merits.  *See infra*.

must still be dismissed for lack of subject matter jurisdiction because their complaint does not state a claim under the SDWA. *Id.* The EPA contends that plaintiffs may not bring a claim under § 300j(8)(a)(1) because they have not identified any *violation* of the SDWA or under § 300j(8)(a)(2) because they have not identified any breach of a *non-discretionary* duty. *Id.* at 16–18.

In other words, the EPA's jurisdictional argument touches on the merits of Sheldon and Blanchette's claims. The plausibility of those claims will be discussed below.

### B. Failure to State a Claim

### 1. Violation of the SDWA

As noted *supra*, plaintiffs Sheldon and Blanchette are the only plaintiffs with standing. Unlike Grinnell, Sheldon and Blanchette do not argue that the new drinking water supply is contaminated. Instead, they argue that they will be left with the cost of finding and maintaining their own water supply. Compl. ¶¶ 14–15. But the SDWA does not mandate that the EPA or the Town provide these plaintiffs with drinking water. *See supra.* Rather, the SDWA authorizes the EPA to promulgate federal regulations that mandate, *inter alia*, the acceptable level of certain contaminants. Because the SDWA is not the statutory source of plaintiffs' rights to water, plaintiffs have failed to plausibly allege a violation of the SDWA.

To the extent that plaintiffs advance a theory of liability under § 300j-8(a)(1) based on the Town's previous violations of the Enhanced Treatment Rule, Compl. ¶ 53, the diligent prosecution rule bars plaintiffs' claim.

As discussed *supra*, § 300j-8(b) imposes conditions precedent that must be satisfied before a plaintiff can pursue a claim under the citizen suit provision of the SDWA.  To bring a claim under § 300j-8(a)(1) for a *violation* of the statute, plaintiffs must satisfy both the notice requirement and the diligent prosecution bar.  42 U.S.C. § 300j-8(b).

Here, the United States and the State, on behalf of and/or through the EPA and the NYDOH diligently prosecuted the Town's previous violations of the Enhanced Treatment Rule by commencing the Enforcement Action.  *See Levin v. Cnty. of Westchester*, 2017 WL 3309757, at *3 (S.D.N.Y. Aug. 2, 2017) (collecting cases) ("Decisions from other circuits in similar cases support the sensible proposition that if the underlying case was diligently pursued, the diligent prosecution bar applies even though the government has entered into a consent decree with a violator following a civil action.").

Further, plaintiffs may not pursue a claim based on the Town's previous violations that have not only been diligently prosecuted but are now the subject of an existing Consent Decree.  *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 25–26 (1989) (holding that when plaintiffs seek to exercise a conditional, statutorily conferred right, they must satisfy the conditions

precedent to bring such a claim).  "[I]n the Second Circuit, it is well-settled that collateral attacks on consent decrees . . . are not permitted." *Id.* (citing *Martino v. Ortiz*, 806 F.2d 1144, 1146 (2d Cir. 1986), *aff'd by equally divided court*, 484 U.S. 301, 304 (1998)).  The proper way to seek a modification of the settlement agreement is from "within[,]" or, "to intervene in the case in which the consent decree was approved[.]"  *Id.* (quotation omitted).

Plaintiffs concede this point.  Pl.'s Opp'n at 10.  In their opposition papers, plaintiffs still ask this Court to "construe the underlying complaint as an 'as of right' intervention in the underlying enforcement action, and grant statutory intervention."  *Id.*  But plaintiffs have not filed any motion in the Enforcement Action, nor have they served the original parties to that suit as required by Rule 24(c).  In short, plaintiffs' request to intervene as of right in the Enforcement Action is not properly before this Court.  Because plaintiffs have not plausibly alleged a violation of the SDWA, Sheldon and Blanchette's § 300j-8(a)(1) claim will be dismissed.

**2.  <u>Failure to Perform a Non-Discretionary Duty</u>**

Finally, plaintiffs allege that the EPA administrator failed to perform his non-discretionary duty to implement or enforce the Consent Decree.  Compl. ¶ 53.  The EPA argues that plaintiffs have not plausibly alleged that the EPA administrator failed to perform any non-discretionary duty that is cognizable under the SDWA.  EPA's Mem. at 16–18.

To begin with the statutory text of the SDWA itself, § 300j-8(a)(2) limits plaintiffs' cause of action to the EPA administrator's failure to perform a non-discretionary duty "under this subchapter."  42 U.S.C. § 300j-8(a)(2).  The duties of the EPA administrator under Subchapter XII do not include enforcing or implementing settlement agreements between the EPA and other parties.

To the contrary, the Supreme Court has held that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).  Further, a consent decree, or a settlement agreement is "hybrid in nature,"  because it is both a contractual agreement between the parties and judicially enforceable.  *N.Y. v. U.S. Envt'l Protec. Agency*, 525 F. Supp. 3d 340, 356 (N.D.N.Y. 2021).

However, consent decrees are only enforceable by the issuing court.  *Id.* (citation omitted).  Plaintiffs may not bring a citizen suit claim to compel the EPA administrator to enforce the Consent Decree.  As discussed above, it is procedurally improper to collaterally attack a settlement agreement or Consent Decree.  The Enforcement Action proceeded to a resolution before Judge Sharpe.  Therefore, is improper for plaintiffs to bring their grievances

in this action instead of attempting to intervene in the Enforcement Action for relief—if it is available.[12]

Therefore, plaintiffs have not stated a claim under § 300j-8(a)(2) for the failure to perform a non-discretionary duty. *Id.* Accordingly, plaintiffs' last remaining claim will be dismissed.

## V. **CONCLUSION**

In sum, plaintiffs have failed to establish subject matter jurisdiction or state any plausible claims under the SDWA. Plaintiff Grinnell fails to plausibly allege an injury-in-fact that is sufficiently "imminent." Plaintiffs Sheldon and Blanchette fail to overcome the NYDOH and the EPA's state and federal sovereign immunity, an inquiry which collapsed into a discussion of the merits of plaintiffs' case.

Therefore, it is

ORDERED that

1. Defendant's motion to dismiss is GRANTED; and

2. Plaintiff's complaint is DISMISSED, with prejudice.

The Clerk of the Court is ordered to enter a judgment and close the file.

IT IS SO ORDERED.

---

[12] Upon a properly served motion in accordance with Rule 24, plaintiffs will need to address timeliness as a threshold inquiry. FED. R. CIV. P. 24.

David N. Hurd
U.S. District Judge

Dated:  June 3, 2024
        Utica, New York.